IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KIMBERLY CARROLL                              *

     Plaintiff,                                *

vs.                                           *

                                   *      Civil Action No.: 1:10-CV-1108-BEL
ERIC SHINSEKI.  Secretary, United States
Department of Veterans Affairs,               *

     Defendant.                                *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

**I.   STATEMENT OF THE CASE**

On June 26, 2009, the Department of Veterans Affairs ("VA") terminated Ms. Kimberly

Carroll ("Plaintiff" or "Ms. Carroll") employment as a Contract Specialist.  Ms. Carroll

believes that the facts and circumstances regarding her firing were discriminatory, as Ms.

Carroll's white counterpart, who was similarly situated as Ms. Carroll, was treated more

favorably than Ms. Carroll.  As a result, Ms. Carroll initiated charges of employment

discrimination against the VA with the VA Office of Resolution Management ("ORM").  After

the ORM charges were accepted and processed, without resolution, Plaintiff filed formal EEO

charges against the VA for disparate treatment based on race.  Subsequently, with the

administrative charges exhausted, Ms. Carroll then filed the instant case against the VA for:

disparate treatment based on race pursuant to Title VII, racial discrimination under 42 U.S.C. §

1981 ("§ 1981"), retaliation under Title VII and § 1981, and the common law claim, intentional

infliction of emotional distress.

## II.      STATEMENTS OF FACTS

**A.      Plaintiff's Employment as a Contract Specialist with the VA**

On September 2, 2008, the VA employed Ms. Carroll as a Contract Specialist. *(Affidavit of Kimberly Carroll, hereinafter Exhibit 1 ¶ 1)* The Contract Specialist was classified as a GS-9 level position, and involves a three-year development-training program at the VA Acquisition Academy (hereinafter "the Academy") in Frederick Maryland. *(Position Description, Intern VA Acquisition Academy herein after Exhibit 2)* The Academy is part of the VA Center for Acquisition Innovation ("CAI). Id. The first two years of employment were to be a probationary period spent in training at the Academy, and the third year was to be spent in residence with the Office of Acquisitions and Logistics. Id. *(Acquisition Intern Development Program Design, hereinafter Exhibit 3)*

Of the 190 applicants, and 61 interviews, Ms. Carroll was one of 30 individuals hired in the inaugural class of the Academy. *(News-Post Staff Article by Ed Walters Jr., hereinafter Exhibit 4)* The Chancellor of the Academy is Lisa Doyle. *Id.* In November 2008, Melissa Starinsky joined the Academy as Vice Chancellor. *(Ex. 1 ¶ 1)*

When applying for the Contract Specialist position, Plaintiff disclosed to the VA information regarding her past employment history. . *(Ex. 1 ¶ 2)* In particular, Plaintiff ended several prior employments by agreement, after Plaintiff did not meet sales and marketing revenue targets or goals. *Id.* In April 2009, Plaintiff was given a "Letter of Warning", granting "final eligibility" for Ms. Carroll "to occupy a position" and warning Ms. Carroll about the

prior employment terminations, which was reported in Plaintiff's background check.  *Id.*

Performance appraisal for the VA General Schedule employees are govern pursuant to VA Handbook, 5013/1 Part 1.  Title 5 Performance Appraisal Program.  *(VA Handbook, 5013/1 Part 1.  Title 5 Performance Appraisal Program, hereinafter Exhibit 5)* This sets forth the policies, procedures and other requirements involved in the VA General Schedule employees performance review and evaluation.  *(Ex 5 at I-1 – I-4)*  Performance is rated for each critical or non-critical element or component of a position that are sufficiently important to warrant appraisal.  *Id.*  The Contract Specialist position had 4 elements, namely, the critical elements, Cyber Security, Contract Management, Working Relationships and Responsibility, and the non-critical element, Training and Individual Development.  *(Performance Plan and Appraisal of Kimberly Carroll, hereinafter Exhibit 6)*  A rating of "Fully Successful" indicates, "The achievement level for at least one critical element is designated as Fully Successful.  *(Ex 5 at I-1 – I-4)*  Achievement levels for other critical and noncritical elements are designated as at least Fully Successful or higher."  *Id.*  A rating of "Unsatisfactory" indicates, "The achievement level(s) for one (or more) critical elements are (are) designated as Less Than Fully Successful. *Id.* Employees whose performance is Less Than Fully Successful in one or more critical elements must be notified in writing and be given a reasonable opportunity to improve their performance to the Fully Successful level.  *Id.*

On June 1, 2009 the VAAA's Vice Chancellor Ms. Starinsky conducted a progress review of Ms. Carroll's performance.  *(Ex. 6)*  Ms. Starinsky appraised Ms. Carroll's performance as "Fully Successful or better".  *(Ex. 6 at 4)*  Ms. Starinsky's appraisal indicated

that Plaintiff was "Fully Successful" in each critical or non-critical requirements of her position as Contract Specialist intern. *Id.* Ms. Starinsky also signed Ms. Carroll's Individual Development Plan" and directed Ms. Carroll to read, by August 2009, the book "Visionary Leadership, by Burt Nanus. *(Ex. 1 ¶ 7)* *(Kimberly Carroll Individual Development Plan, hereinafter Exhibit 7 at 7)*

Plaintiff and Monica Kinderknecht, a white Contract Specialist intern, came to the Academy with a real estate background and were licensed realtors *(Ex. 1 ¶ 3)* *(Monica Kinderknecht Real Estate Business Card, hereinafter Exhibit 27)* Plaintiff had a close relationship with Monica Kinderknecht, and they spent lots of time together at and away from work. *(Ex. 1 ¶ 3)* At times, some interns would approach Ms. Carroll and or Monica Kinderknecht with questions about real estate issues. *Id.* Even Chancellor Lisa Doyle, during an Academy training program or event in October 2008, requested Ms. Carroll's assistance with Ms. Doyle's real estate issue. *Id.* Ms. Carroll immediately assisted Ms. Doyle. *Id.* *(October 2008 Email Exchange between Peter Yanni and Lisa Doyle, hereinafter Exhibit 8)* Monica Kinderknecht also did real estate business with, or for a number of interns, during attendance at the Academy. *(Ex. 1 ¶ 3)*

Ms. Carroll was aware of VA Directive 6001, "Limited Personal Use of Government Office Equipment Including Information Technology." *(Ex. 1 ¶ 5)* Plaintiff's first personal use of VA computer at work was done in October 2008, to assist Ms. Doyle with real estate information Ms. Doyle requested. *(Ex. 1 ¶ 3)* On about three subsequent occasions, Plaintiff

used VA computer to access the internet, and send or check email from her Yahoo email account, pertaining to real estate information.  *(Ex. 1 ¶ 5)  (November 6, 2008 Email from Kimberly Carroll to Kimberly Carroll, hereinafter Exhibit 9)   (April 30 2009 Email from Kimberly Carroll to Chris Anderson, hereinafter Exhibit 10)  (May 1, 2009 Email from James Goldsmith to Kimberly Carroll, hereinafter Exhibit 11)*  Ms. Carroll never conducted any real estate business or transaction using VA computers.  *(Ex. 1 ¶ 5)*  Plaintiff also assisted Ms. Doyle with real estate information during work, using VA equipment, and Ms. Doyle was fully aware that fellow intern Monica Kinderknecht was also using VA computer to send and receive real estate information or carryout other real estate transactions.  *(Ex. 1 ¶ 3-4)*

**B.      Termination of Plaintiff's Employment**

On or about May 5, 2009 Ms. Starinsky requested a meeting with Ms. Carroll to discuss Ms. Carroll's use of VA computers to send email about real estate information.  *(Ex. 1 ¶ 6)*  During the meeting Ms. Carroll asked Ms. Starinsky why Plaintiff was been singled out, since it was known that Monica Kinderknecht was also using her computer in connection to real estate matters.  *Id.* Ms. Starinsky responded that: "this is about you and no one else".  *Id.*  Ms. Carroll also explained that Ms. Carroll believed that the few emails sent by Ms. Carroll did not offend VA Directive 6001, "Limited Personal Use of Government Office Equipment Including Information Technology."   *Id.* Ms. Starinsky disagreed with Ms. Carroll and instructed Ms. Carroll to cease any further personal use of VA computers for any reason, to which Ms. Carroll complied.  *Id.*

On June 1, 2009, Ms. Starinsky met with Ms. Carroll and conducted a performance

appraisal or review, of Ms. Carroll's progress and performance. *(Ex. 1 ¶ 7) (Ex. 6)* Ms. Starinsky appraised Ms. Carroll's performance as been "Fully Successful or better", indicating that Ms. Carroll met the standard for the critical and noncritical elements or components of her position as a Contract Specialist intern. *Id. (Ex 5 at I-1 – I-4)* Ms. Carroll discussed with Ms. Starinsky that Ms. Carroll was complying fully with Ms. Starinsky instructions on the personal use of VA computers, and regretted the prior infraction due to misunderstanding of the limited use policy. *(Ex. 1 ¶ 8)* Ms. Starinsky did not discuss any concerns or indicate to Ms. Carroll concerns by anyone about Ms. Carroll's performance. *Id.* Ms. Starinsky signed Ms. Carroll's Individual Development Plan" and directed Ms. Carroll to read Burt Nanus' book, "Visionary Leadership, by the end of August 2009. *(Ex. 7) (Ex. 1 ¶ 7)*

On June 11, 2010, Plaintiff was summons by Ms. Doyle and given termination a letter, dated June 12, 2010, effectively firing Plaintiff on June 26, 2010. *((Ex. 1 ¶ 9) (Termination from Federal Employment with the Department of Veterans Affairs Memorandum to Kimberly Carroll, hereinafter Exhibit 12) In* the letter, Ms. Doyle gave the reason for firing Plaintiff as, "Violating VA Directive 600192) (C), Misuse or inappropriate personal use of Government office equipment …" and "… during your formal FMG-FAC-C training you received unacceptable ratings in two of the three assessment areas." *Id.* The decision to terminate Plaintiff was made by Ms. Doyle without the knowledge of VA Human Resource office. *(Lisa Doyle Affidavit, hereinafter Exhibit 28) (Victoria D. Jones-Khalil Affidavit, hereinafter Exhibit 13).*

The Federal Market Group, LLC, ("FMG") is a private contractor, that partnered with

the VA to form "Team PwC", a group of three private contractors working jointly with the VA to "develop and implement the Acquisition Intern Development Program." *(Ex. 3 at 3-4)* The other two members of Team PwC were Teaming Arrangement and Halfaker Associates. *Id.* Team PwC was assigned specific responsibilities and activities in relation to the Acquisition Intern Development Program. *Id.* These responsibilities primarily involved developing and conducting instructional courses and training programs for the Academy. *Id.* The VA retained responsibility for the "direct management of Government personnel". *Id.*

Sometime in June 2009 the FMG issued an undated "FMG FAC-C Student Assessment Rubric" for Ms. Carroll, for the period of September 15, 2008 – March 15, 2009.[1]   *(FMG FAC-C Student Assessment Rubric for Kimberly Carroll, hereinafter Exhibit 14)* The "FMG FAC-C Student Assessment Rubric" indicated that Ms. Carroll rated unacceptable in "Thinking" and "Contribution". *Id.* These two of three assessment areas assessed by FMG, are part of the Federal Acquisition Certification in Contracting Program (FAC-C). *Id.* The FAC-C is a component of Plaintiff's Training and Development, a "non-critical" element of the contract specialist position. *(Ex 6 at 2)* The FMG FAC-C Student Assessment Rubric is not contemplated under the VA Performance Appraisal Program, and does not comply with the VA Performance Appraisal Program's mandatory requirements. *(Ex 5 at I-1 – I-4)* The FMG FAC-C Student Assessment Rubric's "unacceptable" assessment of Ms. Carroll, was not approved or accepted by VA officials, as required by the VA Performance Appraisal Program. *(Ex 5 at I-1 – I-4)  (Ex. 6)* Plaintiff was not notified of the unacceptable rating before receiving

---

[1] Late due to loss charter, Etc.  Problems with FMG, etc.,

her termination letter and was not given a reasonable opportunity to improve her performance to the Fully Successful level.  *(Ex. 1 ¶ 10)*

The FMG FAC-C Student Assessment Rubric for Ms. Carroll covered the period from September 15, 2008 through March 15, 2009, during which Ms. Carroll was successful on all the FAC-C courses or trainings conducted by FMG.  *Id.  (VA Acquisition Academy Certificate of Completion for FAC-C Course CON 100 – <u>Shaping Smart Business Arrangement</u>, hereinafter Exhibit 15) (VA Acquisition Academy Certificate of Completion for FAC-C Course CON 101 – <u>Fundamentals of Acquisition Management</u>, hereinafter Exhibit 16) (VA Acquisition Academy Certificate of Completion for FAC-C Course VA LEAD 100 – <u>Honing Your Leadership Skills</u>, hereinafter Exhibit 17) (VA Acquisition Academy Certificate of Completion for FAC-C Course CON 110 – <u>Mission Support Planning</u>, hereinafter Exhibit 18)  (VA Acquisition Academy Certificate of Completion for FAC-C Course PM-100 – <u>The Business Case For Project Management</u>, hereinafter Exhibit 19)  (VA Acquisition Academy Certificate of Completion for FAC-C Course CON 111 – <u>Mission Strategy Execution</u>, hereinafter Exhibit 20) (VA Acquisition Academy Certificate of Completion for FAC-C Course VA LEAD – <u>High Performance Team Building</u>, hereinafter Exhibit 21)  (VA Acquisition Academy Certificate of Completion for FAC-C Course CON 112 – <u>Mission Performance Assessment</u>, hereinafter Exhibit 22) (VA Acquisition Academy Certificate of Completion for FAC-C Course VA LEAD 103 – <u>Negotiation Skills & Techniques</u>, hereinafter Exhibit 23)*  Additionally, the other two members of Team PwC, Teaming Arrangement and Halfaker Associates, who also conducted the FAC-C courses or training programs with Ms. Carroll, for the same period, did not assess or

8

rate Ms. Carroll "unacceptable" in any of the FAC-C courses or training programs.  *(Ex. 1 ¶ 10)*

Plaintiff was terminated along with two other employees who also filed charges of discrimination against the VA.[2]  A number of other interns and or other VA employees also filed complaints, charges, or claims against employment actions taken by Lisa Doyle.  This includes Efrain Fernandez, VA Associate Deputy Assistant Secretary for Acquisitions, who is also Director of the CAI-Fredrick, Maryland Operations, which operates the Academy.  *(Efrain J. Fernandez July 9, 2009 Complaint Against Lisa Doyle, hereinafter Exhibit 24)  (Efrain J. Fernandez August 25, 2009 Supplement to Sworn Testimony, hereinafter Exhibit 25)*   Mr. Fernandez complaint cited over twenty (20) instances or incidences of inappropriate or otherwise illegal employment action, including discrimination, carried out by Ms. Doyle at the Academy.  *(Ex. 24)*  Furthermore, Mr. Fernandez provided sworn statement of facts and information that Lisa Doyle may have fired Sandra Parks, a VA employee at the Academy, because of prohibited discriminatory animus.  *(Ex. 24)*

## C.    Notice of Common Law Tort Claim

On Monday October 25, 2010, Ms. Carroll competed, a Standard Form 95, outlining her claim for injury and or damages in connection with her discharge from the VA on June 29, 2009.  *(Kimberly Carroll's Standard Form 95 Complaint, hereinafter Exhibit 27)*  The Standard Form 95 set forth Ms. Carroll's claim for emotional damage and loss wages.  The Standard Form 95 was sent by U.S.  First Class mail, to Frank Giorno, VA Regional Counsel, at 3900 Loch Raven Boulevard, Building 4, Baltimore, MD 21218.

---

[2] Former VA Contract Specialist Intern, Stanley Lerner, also represented by counsel for the Plaintiff in this action, has a case pending in this court alleging age discrimination as the motive for his discharge from the Academy by Ms. Doyle.

### III.   ARGUMENTS

**DEFENDANT MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE THE MATERIAL FACTS, AND THE REASONABLE INFERENCES THAT CAN BE DRAWN FROM THESE MATERIAL FACTS, ARE IN DISPUTE.  ADDITIONALLY, THE DEFENDANT IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

### A.   Motion to Dismiss and Motion for Summary Judgment Standard of Review

"Fed R. Civ. P. 12(b)(6) permits the court, upon a motion of the Defendant to dismiss all or part of a Plaintiff's cause of action for failure to state a claim upon which relief can be granted. The court must not grant such a motion, however, unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Garrison v. R.H. Barringer,* 152 F. Supp. 2d 858 (D. Md. 2001) (citing *Conley v. Gibson*, 355 U.S. 41 45-46, 2L.  Ed. 2d 80, 78 S. Ct. 99 (1957) and *Mylan Labs., Inc. v. Matgkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  "In making this determination, the court should construe the compliant in the light most favorable to the Plaintiff and must accept all of the Plaintiff's well-pleaded allegations as true." *Mylan Labs*., 7 F.3d at 1134.

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  Fed.R.Civ.P 56(c).  As the party moving for summary judgment, the Defendant has both an initial burden of production, and the ultimate burden of persuading the court that there is "no genuine issue of material fact and that the moving party is entitled to summary judgment." *Fed.R.Civ.Proc. 56(c).*  When the moving party has met their initial burden of production, the opposing party must only present evidence sufficient to create a genuine issue of material fact, i.e.,

that a "fair-minded jury could return a verdict for the [opposing party] on the evidence presented." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2502, 2512-13 (1986).  Inferences drawn from the evidence must be viewed in the light most favorable to the nonmoving party.  *Eastman Kodak Co. v. Image Technical Services, Inc.* 504 U.S. 451, 456, 112 S.Ct. 2072, 2077.  Credibility determinations, weighing of evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether his ruling is on motion for summary judgment or for directed verdict; evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor.  *Id.*   In employment discrimination case, where employer's state of mind necessarily is critical determination, court must find that it is "perfectly clear" that there are no genuine issues of material fact before granting summary judgment.  *Featherson v. Montgomery County Public Schools*, 739 F.Supp 1021 (D. Md. 1990).

Summary judgment is only proper if there is no dispute as to any material fact or as to the reasonable inferences that can be drawn from the facts.  Where the party challenging the grant of summary judgment can show that the inferences they suggest are reasonable in light of the competing inferences, summary judgment must be denied.  *Columbia Union College v. Clarke,* 159 F.3d 151 (D. Md. 1998).  Summary judgment is inappropriate even if merely inferences to be drawn from facts are in dispute.  *U.S. ex rel. Milam v. Regents of University of California,* 912 F.Supp.  868 (D. Md. 1995).  Summary judgment should be granted only when it is clear that there is no dispute concerning either facts of the controversy or inferences to be drawn from those facts. *Neufeld v. City of Baltimore,* 863 F.Supp 255 (D. Md.1994)

**B.     Defendant is not entitled To Summary Judgment on the Plaintiff's Title VII Disparate Treatment Claims**

      **1.     Plaintiff can establish that Plaintiff's June 26, 2010 firing was based on Disparate Treatment.**

"To establish by inference that Defendant treated the Plaintiff in a discriminatory manner because of racial animus, first, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination.  Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the Defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id., at 802, 93 S.Ct. at 1824. Third, should the Defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the Defendant were not its true reasons, but were a pretext for discrimination.  Id., at 804, 93 S.Ct. at 1825. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973).

The first step under the *McDonnell Douglas* burden-shifting framework requires Mr. Carroll to establish prima facie case of discrimination, by showing that "(1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered an adverse employment action by her employer; and (4) similarly situated employees outside of her protected class received more favorable treatment." *Signal v. Gonzales*, 430 F. Supp. 2d 528, (D.S.C. 2006)

**a.  Plaintiff is a Member of a Protected Class**

Defendant does not dispute that Ms. Carroll, an African American, is a member of a class of individuals that Title VII was promulgated to protect.

### b.  Ms. Carroll's Job Performance was Satisfactory:

Although Defendant claims that Ms. Carroll's job performance was not satisfactory, the evidence on records refutes Defendant's claim.   On June 1, 2009, Ms. Starinsky held a performance review and evaluation with Ms. Carroll.  *(Ex 1 ¶ 7)  (Ex. 6)*  Ms. Starinsky indicated that Ms. Carroll's performance "is considered fully successful or better".  *Id.*  This meant that Ms. Carroll was performing successfully in all the critical and non-critical areas of her job requirement.  Ms. Starinsky signed Ms. Carroll's Individual Development Plan" and directed that Ms. Carroll read the book "Visionary Leadership, by Burt Nanus, by August 2009. *(Ex. 7)  (Ex 1 ¶ 7)*  At the performance review, Ms. Starinsky did not discuss with Ms. Carroll the May 2009 counseling regarding infraction of the limited personal use policy.  *(Ex 1 ¶ 8)* Ms. Carroll discussed with Ms. Starinsky that Ms. Carroll was complying fully with Ms. Starinsky instructions on the personal use of VA computers, and regretted the prior infraction due to misunderstanding of the limited use policy.  *Id.* Ms. Starinsky did not discuss any concerns or indicate to Ms. Carroll concerns by anyone about Ms. Carroll's performance. Furthermore, Ms. Starinsky did not make any note on the performance evaluation form, or anywhere else, about any performance issues concerning Ms. Carroll. *(Ex. 6)  (Ex. 7)*

The "FMG FAC-C Student Assessment Rubric" for Ms. Carroll, covered the period from September 15, 2008 – March 15, 2009, a period ending two months and two weeks before Ms. Starinsky appraised Plaintiff's performance as "Fully Successful or better", on June 1, 2009.  *(Ex. 14)*  Although the "FMG FAC-C Student Assessment Rubric" indicated that Ms. Carroll assessed "unacceptable" in "Thinking" and "Contribution", these were two of three

13

assessment areas, which were part of the Federal Acquisition Certification in Contracting Program (FAC-C). *(Ex. 6)* The "Training and Development" requirement of plaintiff's position covers the FAC-C, in which Plaintiff had already successfully completed 10 courses, including some taught by FMG, and was appraised as "Fully Successful" on this requirement. *Id.* Furthermore, the FMG FAC-C Student Assessment Rubric's "unacceptable" assessment of Ms. Carroll, was not approved or accepted by VA officials, and was superseded by Ms. Starinsky's official appraisal indicating that Plaintiff was Fully Successful or better. The RMG assessment was also late and not provided to Plaintiff within the time required pursuant to the VA Performance Appraisal Program. *(Ex. 5)* *(Ex. 6)*

Defendant's claim that Starinsky appraised Ms. Carroll as Fully Successful or better, with knowledge and forewarning that FMG assessments, and decisions regarding Plaintiff's limited use of VA computers were pending, is not worthy of credence. Ms. Starinsky made no indication on Plaintiff's evaluation form or Plaintiff's IDP when Ms. Starinsky signed the evaluation and IDP forms on June 1, 2009. *(Ex. 6)* *(Ex. 7)*

### c. The VA Took Adverse Actions Against, Ms. Carroll

On June 23, 2009, Ms. Carroll was fired from her job as a Contract Specialist Intern with Defendant. This actions by Defendant was an "ultimate employment decisions", adversely affecting the terms, privileges, conditions, and benefits of Ms. Carroll's employment.

### d. Similarly Situated Employee, Monica Kinderknecht was Treated More Favorably Under Similar Circumstances

Defendant, does not dispute that Monica Kinderknecht was treated more favorably than

Ms. Carroll was.  Monica Kinderknecht and Ms. Carroll both came to the Academy with real estate background as licensed real estate agents.  *(Ex 1 ¶ 3)*  Monica Kinderknecht and Ms. Carroll both provided real estate information to interns at the Academy, and they both used VA computer to send or retrieve information about real estate.  *(Ex 1 ¶ 4)*  This was generally known at the Academy, and specifically known by Lisa Doyle who maintained a close personal relationship with Monica Kinderknecht.  *Id.*  However, no disciplinary action was taken against Monica Kinderknecht for the same infractions that Ms. Doyle claim was the basis for Ms. Carroll's discharge.

<strong>2. Defendant Proffered Legitimate Reasons for Firing Ms Carroll are Pretext for Disparate Treatment base on Race.</strong>

"Employment discrimination plaintiff may establish pretext by proving that employer's explanation for employment decision is unworthy of credence or that employer's explanation is false; in appropriate circumstances, trier of fact can reasonably infer from falsity of explanation that employer is dissembling to cover up discriminatory purpose."  *Anderson v. Westinghouse Savannah River Co.,* 406 F. 3d 269 (S.C. 2005)

Defendant's claim that Plaintiff was fired for, "Violating VA Directive 600192) (C), Misuse or inappropriate personal use of Government office equipment …" and "… during your formal FMG-FAC-C training you received unacceptable ratings in two of the three assessment areas", is not worthy of credence.

Ms. Doyle was the first person at the Academy that Plaintiff helped with a real estate issue.  *(Ex 1 ¶ 4)*  Ms. Doyle was aware that Plaintiff used VA computer to assist Ms. Doyle,

and also aware that Monica Kinderknecht was a licensed real estate agent, using VA computers to send and or receive real estate information.  *(Ex 1 ¶ 3)*  Ms. Doyle encouraged Plaintiff's limited personal use of the VA computer when Ms. Doyle engaged Plaintiff at work to assist Ms. Doyle with a real estate issue.  Furthermore, Ms. Doyle took no actions against Monica Kinderknecht for the same infraction, which was carried out more extensively by Monica Kinderknecht.

On June 1, 2009, the Academy Vice Chancellor, Ms. Starinsky, appraised Ms. Carroll's performance as "Fully Successful or better".  However, Defendant claims to fire Ms. Carroll because Plaintiff rated unacceptable in two (2) out of three assessment areas in a "FMG FAC-C Student Assessment Rubric".  *(Ex. 12)*  However, the "Training and Development" requirement of plaintiff's position covers the FAC-C, in which Plaintiff had already successfully completed nine (9) FAC-C courses, including some taught by FMG, and was appraised as "Fully Successful" on this requirement.  These courses included, Fundamentals of Acquisition Management, Honing Your Leadership Skills, Mission Support Planning, Mission Strategy Execution, High Performance Team Building, and Mission Performance Assessment, (Ex. 16, 17, 18, 20, 21 and 22)

Furthermore, the FMG FAC-C Student Assessment Rubric's "unacceptable" assessment of Ms. Carroll, was not approved or accepted by VA officials, and was superseded by Ms. Starinsky's official appraisal indicating that Plaintiff was "Fully Successful or better".  *(Ex. 5)*

Additionally, the RMG assessment was very late and was not provided to Plaintiff within the time required by the VA Performance Appraisal Program.  *Id.*

Defendant's claim that Starinsky appraised Ms. Carroll as Fully Successful or better, with knowledge that FMG assessments, and decisions regarding Plaintiff's limited use of VA computers were pending, is not worthy of credence.  Ms. Starinsky made no indication on Plaintiff's evaluation form or Plaintiff's IDP form when Ms. Starinsky signs the evaluation and IDP forms on June 1, 2009.  *(Ex. 6 and 7)*  Furthermore, Ms. Starinsky did not discuss those issues with Ms. Carroll.  *(Ex 1 ¶ 7-8)*

Subsequent claims of unlawful employment practices and actions by Ms. Doyle, in particular, the facts and allegations set forth against Ms. Doyle in a complaint by Efrain Fernandez, VA Associate Deputy Assistant Secretary for Acquisitions, is probative on the issue of Ms. Doyle's credibility and credence.  *(Ex. 24 & 25)*  As Ms. Doyle's peer at the Academy, Mr. Fernandez alleges serious misconduct and infractions by Ms. Doyle in her employment decisions and actions at the Academy.

### 3.    The Records Shows That Material Fact are In Dispute

A "Court should not grant summary judgment unless the entire record shows right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that adverse party cannot prevail under any circumstances."  *Campbell v. Hewitt, Coleman & Associates, Inc.* 21 F.3d 52 (4th Cir. 1994).  Credibility determinations, weighing of evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether his ruling is on motion for summary judgment or for directed verdict; evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor.  *Eastman Kodak Co. v. Image Technical Services, Inc.* 504 U.S. 451, 456, 112 S.Ct. 2072, 2077.  In

employment discrimination case, where employer's state of mind necessarily is critical determination, court must find that it is "perfectly clear" that there are no genuine issues of material fact before granting summary judgment.  *Featherson v. Montgomery County Public Schools*, 739 F.Supp 1021 (D. Md. 1990).

Material facts regarding Plaintiff's performance appraisal are in dispute.  Material facts regarding Ms. Carroll's limited personal use of the VA computer are in dispute.  Material facts regarding Ms. Doyle and Ms. Starinsky 's knowledge about Monica Kinderknecht use of VA computer in relation to real estate transactions are in dispute.  Material facts are in dispute as to whether Ms. Carroll participated in protected activities.  It is therefore not "perfectly clear" that there are no genuine issues of material fact exist and a reasonable jury could find Defendant reason for Ms. Carroll firing was a pretext for disparate treatment.

**C.     Defendant is not entitled To Preliminary Dismissal or Summary Judgment on the Plaintiff's Retaliation Claims pursuant to Title VII.**

> **1.     Plaintiff Can Prove by Inference that Plaintiff's June 26, 2009 Employment Termination was in Retaliation for Protected Activities**

Where direct or indirect evidence is lacking, the employee may utilize the McDonnell Douglas framework to offer circumstantial evidence of retaliation.  Under McDonnell Douglas, the employee must first establish a prima facie case of retaliation, at which point the burden shifts to the employer to establish a legitimate non-retaliatory reason for its action.  If the employer sets forth a legitimate non-retaliatory explanation, the employee must then show that the employer's proffered reasons are pretextual, otherwise her claim will fail. *Hylind v. Xerox Corp.,* 380 F. Supp. 2d 705, (D. Md. 2005).  *Kline v. Certainteed Corp.* 205 F.Supp.2d 468 (D.

Md. 2002).  Prima facie case of retaliation under Title VII requires a showing that (1) that employee engaged in a protected activity, (2) that her employer took an employment action against her that a reasonable employee would have found materially adverse, and (3) that there was a causal connection between the protected activity and the adverse employment action.. *McGrath-Malott v. Maryland*, 565 F.Supp2.d 656, (D. Md. 2008), *Reed v. Airtran Airways*, 531 F.Supp 2d 660, (D. Md. 2008).

"A employment plaintiff lacking direct evidence of retaliation may utilize the *McDonnell Douglas Corp. v. Green* framework to prove a claim of retaliation.  A plaintiff must first establish a prima facie case of retaliation, whereupon the burden shifts to the employer to establish a legitimate nonretaliatory reason for the action.  If the employer sets forth a legitimate, non-retaliatory explanation for the action, the plaintiff then must show that the employer's proffered reasons are pretextual or his claim will fail.  More specifically, the plaintiff can prove pretext by showing that the explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of retaliation."  Price *v. Thompson*, 380 F.3d 209 (4th Cir. August 18, 2004)

There is indirect evidence in the records of the case to prove that Defendant's June 26, 2009 firing of Plaintiff was based on disparate treatment in violation of Title VII.

### a.  Ms. Carroll Engaged In Protected Activity

To be *"protected activity"* that will support Title VII retaliation claim, employee must have had an objectively reasonable belief that he was complaining about conduct that constituted a Title VII violation.  *Reed v. Airtran Airways*, 531 F.Supp 2d 660, (D. Md. 2008).

"In context of a Title VII retaliation claim, a "protected activity" may fall into two categories, opposition, and participation; protected oppositional activities may include staging informal protests and voicing one's own opinions in order to bring attention to employer's discriminatory activities, as well as complaints about suspected violations.  Title VII retaliation provision protects activity in opposition not only to employment actions that are actually unlawful under Title VII, but also employment actions that employee reasonably believes to be unlawful.  *E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397 (VA. 2005)

In May 2009, when Ms. Starinsky confronted Ms. Carroll about limited personal use of VA computer, Ms. Carroll staged an "informal protest" and voice her opinion that she felt that she was been singled out for unfair treatment, as Monica Kinderknecht and other white interns were also using VA computers for personal use.  *(Ex 1 ¶ 6)*  In addition, Plaintiff knowing that Ms. Doyle was aware of Plaintiff's and Monica Kinderknecht's limited personal use of VA computers, immediately felt that there was some discriminatory motive by Ms. Doyle and Ms. Starinsky in confronting Ms. Carroll about Ms. Carroll's limited personal use of the computer.

### b.  Defendant Took Adverse Action Against the Ms. Carroll:

"In defining what constitutes an adverse employment action for purposes of § 1981, which guarantees equal contract rights regardless of race, the District Court looks to whether discrimination existed in an ultimate employment decision such as hiring, granting leave, discharging, promoting, and compensating."  *Pulley v. KPMG Consulting, Inc*., 348 F. Supp.2d 388 (D. Md. 2004).

On June 26, 2009, Plaintiff was fired from her job a Contract Specialist Intern at the

20

Academy.  *(Ex. 12)*  This actions by Defendant was an "ultimate employment decisions", adversely affecting the terms, privileges, conditions, and benefits of Ms. Carroll's employment. The firing has inflicted direct economic harm and emotional pain and suffering on Ms. Carroll.

### c.  Causal Connection Existed between the Ms. Carroll's Protected Activity and Defendant Firing of Ms. Carroll on June 23, 2009.

To establish a causal connection for a retaliation claim, the plaintiff must show close temporal proximity between the protected activity and the adverse employment action.  The plaintiff must present evidence that his protected activity preceded the adverse action and that the person who engaged in the adverse action was aware of his protected activities before taking adverse action in a timely fashion. *Sheffell v. State Farm Mutual Auto Insurance Co.*, 202 F. Supp.2d (D. Va. 2002)

Causal connection exists between Plaintiff's May 2009 complaint to Ms. Starinsky about been singled out and treated less favorable than Monica Kinderknecht and Defendant's June 12, 2009, decision to fire Plaintiff effective June 26, 2009.  The proximity in time establishes a casual connection between Ms. Carroll's protected activity, and Defendant's adverse action to fire Ms. Carroll from her employment.

### d.  The Court Has Jurisdiction Over Plaintiff's Retaliation Claim

"Before a Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., plaintiff can bring a formal suit, he must file an administrative charge with the Equal Employment Opportunity Commission.  This charge frames the scope of future litigation.  Only those discrimination claims stated in the initial charge, those reasonably related to the original

21

complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Chacko v. Patuxen Institute*, 429 F.3d 505, (4th Cir. November 29, 2005).

This Court does have jurisdiction to hear plaintiff's claims of retaliation under Title VII because the claim is "reasonably related to the original complaint", and or was "developed by reasonable investigation of the original complaint"

### D.  Plaintiff's Tort Claim Is Not Preempted and Is Timely

28 U.S.C. § 1367(a) provides in relevant parts that "in any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy".  Additionally, "Federal court has jurisdiction over entire action, including state-law claims, whenever federal-law claims and state-law claims in case derive from common nucleus of operative facts, and are such that plaintiff would ordinarily be expected to try all of them in one judicial proceeding".  Carnegie-Mellon University v. Cohill, 108 S.Ct. 614 (US.  Pa. 1988)

Plaintiff's common law claim for intentional inflictions of emotional distress forms part of the same case or controversy as Plaintiff's Title VII claim for disparate treatment.  The common law claim for intentional infliction of emotional distress arises out of the damages suffered by Plaintiff because of her termination.  *(Ex1 at 11)*  The common law claim derives from the same "common nucleus of operative facts" supporting the Title VII disparate

treatment claim, "and are such that plaintiff would ordinarily be expected to try all of them in one judicial proceeding."

Pursuant to 28 U.S.C. § 2401(b), "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."

Plaintiff's claim for intentional inflictions of emotional distress is timely as it arises out of Plaintiff's June 26, 2009 discharge, less than two years ago.  On October 25, 2010 Plaintiff prepared and mail Standard Form 95 to Regional Counsel for the VA, Frank Giorno, presenting the Claim to the VA.  *(Ex. 26)*

## IV.    CONCLUSION

WHEREFORE, based on the foregoing, Defendant's Motion to Dismiss and Motion for Summary Judgment should be DENIED.

Respectfully Submitted,


_____/s/_____
George A. Rose, Esq.
Federal Bar No. 26086
Rose Law Firm, LLC
200 E. Lexington St. Suite 800
Baltimore, MD.  21202
Ph.410-727-7555
Fax.  410-727-7585
Email: grose@roselawfirm.net

Attorney for Ms. Kimberly Carroll

23