IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KIMBERLY CARROLL         :
    Plaintiff
                                                    :
    v                                                       Civil Case No. L-10-1108
                                                    :
ERIC SHINSEKI,
Secretary, Department of Veterans Affairs         :
    Defendant         :

o0o
**<u>MEMORANDUM</u>**

       This is an employment discrimination case. The Plaintiff, Kimberly Carroll, alleges that she was terminated from her position as an Acquisition Intern at the Department of Veterans Affairs on the basis of race. She brings suit against Eric Shinseki in his official capacity as Secretary of the Department of Veterans Affairs. Now pending is Shinseki's Motion to Dismiss and for Summary Judgment. Docket No. 8. The Court has reviewed the papers, and no hearing is deemed necessary. <u>See</u> Local Rule 105.6 (D. Md. 2010).

       For the reasons stated herein, the Court will GRANT IN PART and DENY IN PART Shinseki's Motion.

I.      FACTUAL BACKGROUND

       In September of 2008, Carroll, an African-American, was hired as an Acquisition Intern at the Department of Veterans Affairs ("the VA"). She was installed as a member of the inaugural class of the VA's Acquisition Academy Internship School ("AAIS"), a training

program designed to prepare interns for jobs as "certified acquisition professionals" within the VA.

In May of 2009, Carroll's supervisor, Melissa Starinsky, confronted Carroll with what Starinsky characterized as unauthorized and excessive personal use of VA computers and email during working hours. Carroll alleges that in response, she pointed out that other members of the AAIS class were also using VA computers for personal business. Specifically, Carroll identified Monica Kinderknecht, a white intern.[1] She also stated her belief that limited personal use was permitted under applicable VA policies.

On June 1, 2009, Carroll received a formal evaluation rating her performance as "fully successful or better." Notwithstanding this review, on June 12, 2009 Carroll was terminated from her position, ostensibly on the basis of both performance failings and misuse of VA computers, to wit, conducting a personal, for-profit real estate business.

On July 31, 2009, Carroll timely filed a charge with the VA's Office of Resolution Management ("ORM"). The basis for her claim was identified as "Racial Discrimination – Disparate Treatment." Def.'s Mt. to Dismiss Ex. 3C, Docket No. 8 (VA form 4939 – Complaint of Employment Discrimination). On May 3, 2010, Carroll filed the instant civil action, and on June 23, 2010, the ORM issued a final decision dismissing her administrative claim.[2]

Carroll's Complaint contains four counts: Disparate Treatment in violation of Title VII (Count I), Disparate Treatment in violation of 42 U.S.C. § 1981 (Count II), Retaliation in violation of both Title VII and § 1981 (Count III), and Intentional Infliction of Emotional

---

[1] It is unclear from the Complaint whether Carroll ever suggested to Starinsky that she was being singled out on the basis of race, or simply protested that she was being treated differently than another intern, who happened to be white.

[2] See Def.'s Mt. to Dismiss Ex. 5, Docket No. 8. A complainant may file suit in federal court provided that at least 180 days have elapsed since the filing of an administrative complaint, though the EEOC has not issued a final determination in its investigation. See 42 U.S.C. § 2000e-5(f)(1). EEOC Regulations provide provides that the agency shall dismiss a complaint that has become the basis of a pending civil action. 29 C.F.R. 1614.107(a)(3).

Distress (Count IV). On September 3, 2010, Shinseki filed the pending motion, seeking summary judgment on Carroll's Title VII Disparate Treatment claim and dismissal of all other claims.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead plausible, not merely conceivable, facts in support of his claim. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). The complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965. The Court must, however, "assume the veracity [of well-pleaded factual allegations] and then determine whether they plausibly give rise to an entitlement of relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

When a Rule 12(b)(1) challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff. Richmond, Fredericksburg & Potomac R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991). When considering whether jurisdiction exists, the Court may examine evidence outside the pleadings without converting the proceeding to one for summary judgment. Id. However, the Court must apply the summary judgment standard, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Id. The movant will prevail if the material jurisdictional facts are not in dispute and the movant is entitled to prevail as a matter of law. Id.

### III. DISCUSSION

All of Carroll's claims must be dismissed except for her claim of Disparate Treatment under Title VII. On this count the Court will order discovery.

**a. Disparate Treatment in violation of Title VII**

Carroll alleges that she was terminated on the basis of race in violation of Title VII of the Civil Rights Act of 1964. Because she suggests no direct evidence of discriminatory animus, her claim must be analyzed under the well established burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a prima facie case of disparate treatment, a plaintiff must show that: (1) she is a member of a protected class, (2) she was qualified for her job and her job performance was satisfactory, (3) she was fired, and (4) other employees who are not members of the protected class were retained under apparently similar circumstances. Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995) (citing McDonnell Douglas).

Shinseki asserts that, even assuming arguendo that Carroll satisfies the first, third, and fourth elements, she would be incapable of proving that her job performance was satisfactory. In support of this contention, Shinseki presents evidence of several defects in Carroll's record that he maintains would preclude a finding of satisfactory performance notwithstanding the results of Carroll's formal evaluation, and seeks summary judgment on this basis. First, Shinseki states that Carroll's misuse of government computers to run a private real estate business was not taken into account when preparing her evaluation because the issue was related to misconduct, not performance per se. Def.'s Mt. to Dismiss 6, Docket No. 8. Second, Shinseki proffers an assessment of Carroll's classroom performance prepared by Federal Markets Group, a contractor retained to teach many of the classes that made up the AAIS curriculum. The assessment, which

the VA received subsequent to Carroll's "fully successful or better" evaluation but prior to the decision to terminate her employment, rated Carroll's performance as "unacceptable" in two areas and expressed "concerns about her ability to function as a contracting officer." Def.'s Mt. to Dismiss Ex. 3R, Docket No. 8. Finally, Shinseki states that a background check revealed that Carroll "had been fired or left a job by mutual agreement six times due to inability to maintain minimal performance standards." Def.'s Mt. to Dismiss 16, Docket No. 8.

It is the normal practice of this Court not to entertain motions for summary judgment until the parties have had an opportunity to conduct discovery and the record has been fully developed. For this reason, the Court declines to decide whether or not Shinseki is entitled to summary judgment at this time. Carrol's job performance is a disputed question of fact, as is the treatment of similarly situated employees. While Shinseki has submitted some evidence already, the parties must be given an opportunity to explore fully the factual circumstances surrounding these issues. The Court will, therefore, enter a scheduling order and direct the parties to commence discovery on Carroll's disparate treatment claim.

**b. Section 1981 and Intentional Infliction of Emotional Distress**

In addition to her Title VII claims, Carroll seeks redress for her allegedly wrongful termination under the Civil Rights Act of 1866, codified at 42 U.S.C. §1981. Though courts have recognized that Title VII and § 1981 are not mutually exclusive remedies for discrimination occurring in the context of private employment, the Supreme Court concluded in <u>Brown v. General Services Administration</u>, 425 U.S. 820, 829, 835 (1976), that Congress intended for Title VII to be the "exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination," and thus held that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." <u>See also</u> <u>Pueschel v. U.S.</u>, 369 F.3d

345, 352–53 (4th Cir. 2004) (quoting Brown). Carroll's § 1981 claim is preempted and must be dismissed.

This exclusivity also requires dismissal of Carroll's claim for Intentional Infliction of Emotional Distress. The Fourth Circuit has held that Title VII's preclusive effect extends to Federal Tort Claims Act suits seeking relief for harms suffered as a result of discrimination or retaliation in federal employment. Id. at 353.[3]

### c. Retaliation

Carroll's retaliation claims must be dismissed because these claims were not presented in her complaint to the ORM.

As a prerequisite to filing suit under Title VII, a plaintiff is required to exhaust her administrative remedies, and a federal court may not assume jurisdiction over unexhausted claims. Davis v. North Carolina Dep't of Correction, 48 F.3d 134, 137 (4th Cir. 1995). As noted above, in determining the existence of jurisdiction, a federal court may properly consider evidence outside the pleadings without converting the proceeding to one for summary judgment.

In considering whether administrative remedies have been exhausted, a plaintiff is not limited to the precise wording of her charge, but may litigate all claims that would be uncovered in a reasonable investigation of that charge. Talbot v. U.S. Foodservice, Inc., 191 F. Supp. 2d 637, 639 (D. Md. 2002). The suit filed, however, "may encompass only the discrimination stated in the charge itself or developed in the course of a reasonable investigation." Id. at 640 (quoting King v. Seaboard Coast Line R.R. Co., 538 F.2d 581, 583 (4th Cir. 1976)).

---

[3] Even if it were not preempted, Carroll's IIED claim could not proceed. Prior to filing suit under the Tort Claims Act, a plaintiff must first present the claim to the appropriate federal agency. 28 U.S.C. § 2675(a). Carroll acknowledges that she did not provide the VA with notice of her claim until October 25, 2010, more than five months after filing her Complaint in this case. Pl.'s Opp. 9, Docket No. 13.

6

Review of Carroll's complaint to the ORM reveals that she advanced allegations of disparate treatment on the basis of race and age, but not retaliation. Def.'s Mt. to Dismiss Ex. 3C, Docket No. 8. This understanding of the scope of Carroll's complaint was confirmed in a letter dated September 3, 2009 from the ORM informing Carroll, through her counsel, that her complaint "raises the following claim: Whether on the basis of age (40) and race (African American) on June 12, 2009, your client was informed that she would be terminated from the position of Career Intern Contract Specialist . . . ." The letter invited Carroll to contact the ORM if this formulation was incorrect or incomplete. Def.'s Opp. Ex. 3D, Docket No. 8.

It is well established that an investigation of retaliation cannot be expected to follow a charge of discrimination, and that therefore a plaintiff may not bring a suit alleging retaliation if such allegations were not included in the agency complaint. See Bryant v. Bell Atlantic Md. Inc., 288 F.3d 124 (4th Cir. 2002) (finding that an investigation of retaliation could not be expected to occur based on race discrimination claim and dismissing retaliation claim for failure to exhaust administrative remedies); Sloop v. Memorial Mission Hosp., Inc., 198 F.3d 147, 149 (4th Cir. 1999) (finding no exhaustion of retaliation claim where plaintiff checked only the box for age discrimination and did not mention retaliation except in post-charge letter to EEOC); Lyon v. Bell Atlantic Corp., Case No. JFM-99-3631, 2001 WL 826580, at *5 (D. Md. July 19, 2001) (finding no administrative exhaustion where plaintiff had not checked the box for retaliation and did not mention retaliation in the charge narrative).

Carroll has failed to exhaust her administrative remedies with regard to a charge of retaliation, and consequently she may not bring suit on that basis. Because the Court lacks subject matter jurisdiction to consider her retaliation claims, they must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court will, by separate Order of even date, GRANT IN PART and DENY IN PART Shinseki's Motion to Dismiss and for Summary Judgment (Docket No. 8) as follows:

    i.    The case will proceed to discovery as to Count I, and

    ii.    Counts II, III, and IV of the Complaint will be DISMISSED.


Dated this 31st day of March, 2011.

                                      /s/
                                _____
                                Benson Everett Legg
                                United States District Judge